FERGUS COUNTY, Respondent, *v.* OSWEILER, Appellant.

(No. 7,815.)

(Submitted December 12, 1938. Decided December 31, 1938.)

[86 Pac. (2d) 410.]

*Mr. H. Leonard DeKalb,* and *Mr. O. O. Mueller,* for Appellant, submitted a brief; *Mr. DeKalb* argued the cause orally.

470

*Mr. Harrison J. Freebourn,* Attorney General, *Mr. Enor K. Matson* and *Mr. Lee Metcalf,* Assistant Attorneys General, and *Messrs. J. E. McKenna* and *Aaron R. Shull,* respectively County Attorney and Assistant County Attorney of Fergus County, for Respondent, submitted a brief; *Mr. Metcalf* and *Mr. McKenna* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

The First National Bank of Fergus County became insolvent and suspended business December 10, 1923. It had on deposit at that time funds of Fergus county of approximately $700,000, secured by a depository bond executed by a number of individuals, of whom defendant was one. His liability on the bond was expressly limited to $30,000. Through moneys received from the receiver and property turned over by the bank the liability of the bondsmen was reduced by 62 per cent., leaving 38 per cent. still due. The county commissioners then adopted a resolution purporting to release any bondsmen who would pay to the county a sum in cash equal to 38 per cent. of his bond liability, or, in lieu of cash payment, upon such bondsmen giving a promissory note for such sum upon such terms and conditions and security as would be satisfactory to the county. Pursuant to that resolution defendant was requested to, and did on September 11, 1928, sign a promissory note in the sum of $11,400, payable May 1, 1932, bearing two per cent. interest until maturity, and eight per cent. thereafter. Thereafter defendant paid $400 on the principal of the note, and paid interest up to December 31, 1929.

This action was brought to recover on the note. The defense asserted is that the note was based upon an illegal and void consideration, in that it was an attempt to postpone an obligation or liability contrary to the provisions of section 39, Article V of the Constitution. It was also alleged that no action was ever brought on the bond, and that action thereon is now barred by section 9029, Revised Codes. The reply in effect alleges that defendant is estopped from asserting the defense relied on.

The cause was tried to the court without a jury. The court found for plaintiff, and defendant has appealed from the judgment.

The court found that section 39, Article V of the Constitution, has no application to the facts of this case and that, if that section did apply, defendant is not estopped from setting up the illegality of the note. If the conclusion of the trial court is correct, then the judgment must be affirmed, even though the court may not have given the correct reason for its conclusion. (*Whitcomb* v. *Beyerlein*, 84 Mont. 470, 276 Pac. 430; *Dubie* v. *Batani*, 97 Mont. 468, 37 Pac. (2d) 662.)

Section 39 of Article V provides: "No obligation or liability of any person, association or corporation, held or owned by the state, or any municipal corporation therein, shall ever be exchanged, transferred, remitted, released or postponed, or in any way diminished by the legislative assembly; nor shall such liability or obligation be extinguished, except by the payment thereof into the proper treasury."

In considering the correctness of the court's conclusion we shall assume that the taking of the note in question constituted an unlawful postponement of the obligation or liability under the bond. It will be observed that section 39 prescribes no penalty for its violation. It simply declares a policy. It does not make it unlawful for the state or a subdivision thereof to become the payee of a promissory note. It does prohibit the postponement of an obligation, and for the purpose of this case we shall consider the note in question here, which gave defendant until 1932 to pay the obligation, as coming in conflict with section 39, Article V.

The provisions of that section are designed for the benefit of taxpayers by protection of the obligations and liabilities held or owned by the state and municipal corporations. Under the facts here, if payment on the note cannot be enforced, then no recovery can be had at all because the statute of limitations has run against the liability under the bond and the constitutional provision which was intended to protect the taxpayer will be used to defeat justice and accomplish a legal wrong. It will operate to extinguish the obligation of defendant otherwise than by payment thereof into the proper treasury, contrary

to the terms of the very section of the Constitution relied upon by defendant.

While generally a party to an illegal contract will not be permitted to enforce it, yet there is an exception to the rule which has been so uniformly accepted by the courts that it is no longer regarded as an exception, but has itself become a general rule. It is succinctly stated in the Restatement of the Law of Contracts, section 601, as follows: "If refusal to enforce or to rescind an illegal bargain would produce a harmful effect on parties for whose protection the law making the bargain illegal exists, enforcement or rescission, whichever is appropriate, is allowed." Cases most frequently applying the rule are those wherein a national bank makes a loan or other contract expressly prohibited by law and wherein the law does not otherwise prescribe the consequences that flow from a violation of its terms. The courts are practically unanimous in holding that such contracts are enforceable and binding. Among the cases so holding are the following: *Union Gold Min. Co.* v. *Rocky Mountain Nat. Bank*, 96 U. S. 640, 24 L. Ed. 648; *Union Nat. Bank of St. Louis* v. *Matthews*, 98 U. S. 621, 25 L. Ed. 188; *Thompson* v. *Saint Nicholas Nat. Bank*, 146 U. S. 240, 13 Sup. Ct. 66, 36 L. Ed. 956; *Third Nat. Bank of Buffalo* v. *Buffalo German Ins. Co.*, 193 U. S. 581, 24 Sup. Ct. 524, 48 L. Ed. 801; *Kerfoot* v. *Farmers' & Merchants' Bank*, 218 U. S. 281, 31 Sup. Ct. 14, 54 L. Ed. 1042; *Schneider* v. *Thompson*, (8 Cir.) 58 Fed. (2d) 94; *Lucas* v. *Federal Reserve Bank*, (4 Cir.) 59 Fed. (2d) 617; *Camp* v. *Land*, 122 Cal. 167, 54 Pac. 839; *Machado* v. *Bank of Italy*, 67 Cal. App. 769, 228 Pac. 369; 9 C. J. S., Banks and Banking, p. 1220, sec. 664; 7 C. J. 832.

In *Rossi* v. *Jedlick*, 115 Cal. App. 230, 1 Pac. (2d) 1065, the court stated the rule which has application here, as follows: "Where a class of contracts is prohibited for the protection of particular parties thereto, the adverse parties cannot take advantage of the illegality of such contracts. * * * The inhibitions of the Corporate Securities Act are designed for the protection of the purchasers of stock in corporations, and

the finest of technicalities should not be indulged in to enable the promoters of such corporations to escape their obligation to the various persons whom the statute was designed to protect."

Mr. Williston, in his revised edition on Contracts, volume 5, section 1632, states the rule as follows: "In some cases where a refusal to enforce an agreement would produce the very effect which the law seeks to guard against, a corporation is allowed to enforce it, although it was particularly prohibited and made illegal. Thus, for the security of depositors and others, banks are prohibited from entering into certain kinds of loans or purchases. When a transaction of this sort has been entered into, however, should the corporation be refused a right of recovery the result would be the impairment of the assets of the bank,—the very result which the law seeks to prevent, and, therefore, the bank is allowed to recover." Many cases are cited to support the text.

Here the defendant reaped the benefit of the note in question. By it he reduced the legal interest rate on the obligation from 8 per cent. to 2 per cent. He obtained a release of his bond obligation, resulting in an extension of time of more than three years to pay his obligation during which time the statute of limitations has run against the bond obligation. He recognized the note as valid by making some payments thereon. He will not be permitted to say that the note is invalid and unenforceable and thus defeat the very purpose of section 39 of Article V, which, among other things, prohibits the extinguishment of an obligation or liability except by payment into the proper treasury.

The judgment is affirmed.

Mr. Chief Justice Johnson and Associate Justices Stewart, Anderson and Morris concur.

Rehearing denied January 27, 1939.